UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
U.S. PIPELINING, LLC                            :
                                                :
                          Plaintiff,            :
                                                :         **MEMORANDUM & ORDER**
              -against-                         :         14-CV-5566 (DLI)(JO)
                                                :
BANCKER CONSTRUCTION CORP.,                     :
EXXON MOBILE CORP., and TRAVELERS               :
CASUALTY & SURETY COMPANY OF                    :
AMERICA,                                        :
                                                :
                          Defendants.           :
------------------------------------------------------------ x

**DORA L. IRIZARRY, Chief Judge:**

On September 22, 2014, plaintiff U.S. Pipelining, LLC ("plaintiff" or "U.S. Pipelining") filed this diversity action against defendants Bancker Construction Corporation ("Bancker"), Exxon Mobil Corporation ("Exxon"), and Travelers Casualty & Surety Company of America ("Travelers") (collectively, "defendants") for damages arising out of Bancker's alleged breach of its subcontract with U.S. Pipelining to complete a storm drainage rehabilitation project. (*See* Complaint ("Compl"), Dkt. Entry No. 1.) Defendants have moved to dismiss the Complaint pursuant to the doctrine of *forum non conveniens* based upon two forum-selection clauses in the subcontract between plaintiff and Bancker that defendants contend require this lawsuit to be litigated in a New York State Supreme Court. In the alternative, defendants move to dismiss plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, defendants' motion to dismiss based upon the *forum non conveniens* doctrine is granted.

**BACKGROUND**

The following factual allegations, which the Court views in the light most favorable to plaintiff for purposes of this motion, are taken from the complaint as well as the parties' pleadings and affidavits. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) ("[I]n evaluating a motion to dismiss based on a forum selection clause, a district court typically relies on pleadings and affidavits."). Defendants Bancker and Exxon are the parties to a prime contract (the "Prime Contract") requiring Bancker to furnish construction services and materials for a storm drainage rehabilitation project at a property owned by Exxon in Brooklyn, New York. (Compl. at ¶¶ 8-9.) On or about April 7, 2014, plaintiff and Bancker executed a subcontract (the "Subcontract")[1] pursuant to which plaintiff was responsible for installing two cured-in-place pipes at the storm drainage project site. (*Id*. at ¶ 10; *see* Subcontract.) The Subcontract designates Bancker as the "Contractor" and plaintiff as the "Subcontractor." (Subcontract at 1.)

The Subcontract consists of a general "Standard Form of Agreement" (the "Agreement") as well as a series of riders (the "Riders") attached to the Agreement that set forth terms and conditions specific to the storm drainage rehabilitation project: Rider A (detailing "Scope of Work and Payment Breakdown"), Rider A-1 ("Additional Pricing/Payment Terms"), Rider B ("Schedule and Milestone Deadlines"), and Rider C ("Insurance Requirements"). (*See* Subcontract.) The Subcontract also incorporates by reference the Prime Contract between Bancker and Exxon.[2] (*Id*.

---

[1] Plaintiff attached a "true and correct" copy of the Subcontract to the Complaint. (*See* Compl., Ex. A.)

[2] The Prime Contract is not attached to the complaint or the parties' pleadings and neither plaintiff nor defendants contend that a forum-selection clause in the Prime Contract controls venue for this matter. Even if there were a conflict between the Prime Contract and Subcontract, the terms of the Subcontract expressly supersede the Prime Contract where an inconsistency exists. (*See* Subcontract, Art. 2.1 ("Where a provision of the Prime Contract is inconsistent with a provision of the Subcontract, the Subcontract shall govern ....").)

at Art. 16.) Collectively, the Agreement, the Riders, and the Prime Contract compose the "Subcontract Documents," as set forth in Article 16 to the Subcontract:

> 16.1 - The Subcontract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follow:
>
> (i) This Agreement, including all riders attached hereto or referred to herein;
>
> (ii) The Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated in the Owner-Contractor Agreement [...];
>
> (iii) The following Modifications to the Prior Contract, if any issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:
>
> NONE, UNLESS LISTED IN RIDERS
>
> And (iv) Any other document delivered or referred to in this Subcontract as a Subcontract Document.

(Subcontract, Art. 16.) The Subcontract also includes the following integration clause:

> The Subcontract represents the entire and integrated Agreement between the parties hereto and supersedes prior negotiations, representations or agreement, either written or oral.

(*Id*. at Art. 1.) The President of U.S. Pipelining, Jeremy R. Bowman, and the Vice President of Bancker, Phillip M. Beyer, each signed the last page of the Agreement and Riders A, B, and C to the Agreement. (*Id.*)

Plaintiff commenced the storm drainage rehabilitation project as scheduled in May 2014, and completed installation of the first pipeline. (Compl. at ¶ 11; Declaration of Emily D. Anderson in Support of Defendants' Motion to Dismiss ("Anderson Decl.") at ¶ 4, Dkt. Entry No. 16-2.)[3] The parties agree, however, that Bancker terminated the Subcontract before plaintiff completed installation of the second pipeline. (Compl. at ¶ 11; Anderson Decl. at ¶ 4.) Bancker subsequently

---

[3] Emily D. Anderson was defendants' counsel in this matter. (Anderson Decl. at ¶ 1.)

denied plaintiff's request for payment. (Compl. at ¶ 12.) Plaintiff responded by filing a mechanics lien (the "Mechanic's Lien") against the Exxon property for $185,000.00, the full amount of the Subcontract. (*Id.* ¶ 18; *see also* ECF No. 16-5, Mechanic's Lien.) On July 15, 2014, Bancker discharged the Mechanic's Lien by posting a lien discharge bond issued by Travelers. (Compl. ¶¶ 19-20.)

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit on September 22, 2014, bringing a claim against Bancker for breach of contract, a claim against Exxon for unjust enrichment, and a claim against Travelers to compel payment on the lien discharge bond that Travelers issued. (*Id.* ¶¶ 13-21.)

On March 31, 2015, defendants moved to dismiss the complaint pursuant to the common law doctrine of *forum non conveniens*. (*See* Defendants' Motion to Dismiss ("Def. Mot. to Dismiss"), Dkt. Entry No. 16.) Defendants base their motion on two forum-selection clauses in the Subcontract. The first forum-selection clause appears in Paragraph 6.1 of the Agreement and provides, in relevant part:

> Any action or proceeding arising out of or in connection with this Subcontract shall be commenced and maintained in a court of competent jurisdiction in the County of Suffolk, State of New York (or in such other court or venue as may be specified in the Prime Contract or as designated by Contractor), and may not be commenced in any other court.

(Agreement, ¶ 6.1.) Defendants contend that Paragraph 6.1 provided Bancker a right to designate a forum of its choice for proceedings arising out of the contract, which Bancker exercised by including a second forum-selection clause in Rider A-1 to the Agreement that provides:

> Per NY General Business Law 757(1), the terms of this Agreement and any disputes arising hereunder shall be governed by New York State law and legal forum shall lie exclusively with the Supreme Court of New York State.

(Def. Mot. to Dismiss at 2-3; *see also* Subcontract, Rider A-1 at ¶ 5.)[4]  According to defendants, the forum-selection clause in Rider A-1 requires dismissal for *forum non conveniens* because plaintiff's claims arise out of the Subcontract and therefore must be adjudicated in a New York State Supreme Court.  (Def. Mot. to Dismiss at 2-4.)  In the alternative, defendants argue the complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*Id*. at 7-12.)  Plaintiff opposes the motion, arguing that the Rider A-1 forum-selection clause is unenforceable because Rider A-1 is ambiguous, not signed by the parties, and in conflict with the less restrictive forum-selection clause in Paragraph 6.1 of the Agreement.  (*See* Plaintiff's Opposition to Motion to Dismiss ("Pl.'s Opp."), Dkt. Entry No. 17.)

## LEGAL STANDARD

"The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Atlantic Marine Construction Co., Inc. v. U.S. District Court for the Western District of Texas*, – U.S. –, 134 S. Ct. 568, 581 (2013) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, (1988)); *see In re Refco Inc., Securities Litigation*, 2009 WL 5548666, at *5 (S.D.N.Y. Nov. 16, 2009) ("Both the Supreme Court and the Second Circuit have recognized that forum-selection clauses have economic value and should be enforced in accordance with the expectations of the parties.").  "The appropriate way to enforce a forum-selection clause pointing to a state or a foreign forum is through the doctrine of *forum non conveniens*."  *Atlantic Marine*, 134 S. Ct. at 580.

---

[4]  NY General Business Law 757(1) provides that a "provision, covenant, clause or understanding in, collateral to or affecting a construction contract, with the exception of a contract with a material supplier, that makes the contract subject to the laws of another state or that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state" shall be void and unenforceable.

In evaluating a motion to dismiss based on a forum-selection clause, the party seeking to avoid enforcement of the clause is entitled to have disputed facts resolved in its favor, and no disputed fact should be resolved against that party absent an evidentiary hearing. *Martinez v. Bloomberg LP*, 740 F.3d 211, 216-17 (2d Cir. 2014) (citing *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997)). Here, the parties have not requested an evidentiary hearing and proceed on the basis of the pleadings and the affidavits they submitted in connection with the motion to dismiss.

## DISCUSSION

Under the doctrine of *forum non conveniens*, an enforceable forum-selection clause requiring that disputes be adjudicated in a state or foreign forum must be given "controlling weight in all but the most exceptional cases." *Atlantic Marine*, 134 S. Ct. at 579 (citations and quotation marks omitted). In determining whether a forum-selection is enforceable, "the Court must consider, first, whether the forum-selection clause is valid and, second, whether public interest factors nevertheless counsel against its enforcement." *Midamines SPRL Ltd. v. KBC Bank NV*, 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014).

### I. The Forum-Selection Clause is Valid

In this Circuit, the validity of a forum-selection clause is evaluated using a four-part analysis. *Martinez*, 740 F.3d at 217. The court must determine: "(1) 'whether the clause was reasonably communicated to the party resisting enforcement,' (2) whether the clause is 'mandatory or permissive, i.e., … whether the parties are required to bring any 5 [sic] dispute to the designated forum or simply *permitted* to do so'; and (3) 'whether the claims and parties involved in the suit are subject to the forum selection clause.'" *Id.* (quoting *Phillips v. Audio Active Ltd*, 494 F.3d 378, 383 (2d Cir. 2007)). If those conditions are satisfied, then the clause is "presumptively

enforceable" unless the party resisting enforcement can demonstrate that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id*.

Although this federal law framework applies to determine the validity of the forum-selection clause, "in answering the *interpretive* questions posed by parts two and three of the four-part framework" the court should "apply the body of law selected in an otherwise valid choice-of-law clause." *Martinez*, 740 F.3d at 217-18 (emphasis in original). Thus, to the extent interpretative questions arise in determining whether the Rider A-1 forum-selection clause is mandatory or permissive (part two) or whether its scope encompasses the parties and claims in this suit (part three), New York law controls matters of construction, as designated by the parties in the Subcontract. (Subcontract, Paragraph 6.1; Rider A-1 at ¶ 5).

### A. The Forum-Selection Clause Was Reasonably Communicated to Plaintiff

Courts consider a forum-selection clause to be reasonably communicated to a party resisting enforcement, "if it is phrased in clear and unambiguous language." *Magi XXI, Inc. v. Stato Della Del Vaticano*, 818 F. Supp.2d 597, 605 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir. 2013); *Saye v. First Specialty Ins. Co.,* 2015 WL 1737949, at *4 (E.D.N.Y. Apr. 16, 2015) ("the forum-selection clause was clearly stated in the [contract] and was thus reasonably communicated").

Here, the Rider A-1 forum-selection clause is set off in its own paragraph and clearly communicates that "legal forum shall lie exclusively with the Supreme Court of New York State." (Subcontract, Rider A-1 at ¶ 5.). The Riders to the Agreement, including Rider A-1, are expressly designated as "Subcontract Documents" and incorporated into the Subcontract that the president of U.S. Pipelining signed on behalf of the company and now seeks to enforce. These circumstances

7

are sufficient to find that the Rider A-1 forum-selection clause was reasonably communicated to plaintiff. *See, e.g., Arial Tech., LLC v. Aerophile S.A.*, 2015 WL 1501115, at *3 (S.D.N.Y. Mar. 31, 2015) (noting this prong was "easily" satisfied where the clause "appear[ed] on the face of the contract that [the party] signed and now seeks to enforce"); *Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Manufacturers Inc.*, 952 F. Supp.2d 542, 558 (S.D.N.Y. 2013) ("Plaintiff seeks to enforce the terms of the Venture Agreement and therefore cannot . . . argue that it was unaware of the clause's existence."); *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 WL 421793, at *5 (S.D.N.Y. Mar.5, 2004) (enforcing a forum-selection clause that "was in no way hidden from [the non-moving party] or buried in contract minutia").

Plaintiff argues that the Rider A-1 forum-selection clause incorrectly states New York law governs and, therefore, is ambiguous and unenforceable. (Pl.'s Opp. at 6.) The clause states that "[p]er New York General Business Law § 757(1)" New York law governs the Subcontract and "legal forum shall lie exclusively with the Supreme Court of New York State." (Subcontract, Rider A-1 at ¶ 5). New York General Business Law § 757(1) provides that the following type of provision in construction contracts is "void and unenforceable":

> A provision, covenant, clause or understanding in, collateral to or affecting a construction contract, with the exception of a contract with a material supplier, that makes the contract subject to the laws of another state or that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state.

N.Y. Gen. Bus. Law § 757(1). Plaintiff argues that the Rider A-1 forum-selection clause "espous[es] erroneous law" because it requires venue "exclusively" in the New York State Supreme Court, whereas New York General Business Law § 757(1) permits venue in New York state or federal courts. (Pl.'s Opp. at 6.) Plaintiff's argument is unavailing. Rather than incorrectly citing New York General Business law, the Rider A-1 forum-selection clause simply references

8

Section 757(1)'s general prohibition of litigation outside New York State, then further restricts the forum "exclusively" to the New York State Supreme Court for claims arising out of the Subcontract. This provision makes Rider A-1 less ambiguous and clearer by providing the parties' notice of the forum where disputes arising out of the Subcontract shall be heard. Therefore, the forum selection clause was reasonably communicated to plaintiff and the first element of the forum-selection clause validity analysis is satisfied.

### B. The Rider A-1 Forum Selection Cause is Mandatory

"A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386. The Rider A-1 forum-selection clause provides that "legal forum shall lie *exclusively* with the [S]upreme [C]ourt of New York State." (Subcontract, Rider A-1 (emphasis added).) The clause unequivocally confers jurisdiction on the New York State Supreme Court to the exclusion of any other forum and therefore, is mandatory. *See, e.g.*, *Giordano v. UBS, AG*, 2015 WL 5671970, *4 (S.D.N.Y. Sept. 25, 2015) (finding that a forum selection clause stating that "the exclusive place of jurisdiction" for all disputes arising out of a bank account relationship between the parties "shall be Geneve[,]" Switzerland is mandatory). Accordingly, the second element of the forum-selection clause validity analysis is satisfied.

### C. All of the Claims and Parties are Subject to the Forum-Selection Clause

The Second Circuit has held that:

> [A] non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is closely related to another signatory. In such instances, the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is foreseeable to the signatory against whom the non-signatory wishes to enforce the forum selection clause.

*Magi XXI*, 714 F.3d at 723 (internal quotation marks and citation omitted). The broad, inclusive language applying the forum-selection clause to "any disputes arising [under the Subcontract] shall be governed by New York State law and legal forum shall lie exclusively with the [S]upreme [C]ourt of New York State" establishes that the claims and parties involved in the instant matter are subject to the clause. (Subcontract, Rider A-1.); *see Id.* (finding that contract "language applying the clause to 'any disputes arising out of and in connection with the present Agreement'" renders all parties subject to the forum-selection clause). All defendants are clearly able to enforce the forum-selection clause because their enforcement was reasonably foreseeable to Plaintiff.

As defendants correctly note in their moving papers, the "any disputes arising hereunder" language of the Subcontract encompasses all parties and all claims in this matter. (Def. Mot. to Dismiss at 5.) Plaintiff's first cause of action for breach of contract against Bancker seeks judicial enforcement of the payment provisions of the Subcontract. (Compl. at ¶¶ 12-14.) The enforcement of those provisions necessarily constitutes a dispute arising under the Subcontract and therefore, is subject to the forum-selection clause established therein.

Plaintiff's second cause of action for unjust enrichment against Exxon incorporates by reference the allegations associated with the breach of contract claim and thereby relies upon the same operative facts underlying that claim. (Compl. at ¶¶ 15-16.) Specifically, Plaintiff alleges that it did not receive contractually negotiated compensation for the construction work performed for Bancker on Exxon's property, for which Exxon received an unjust benefit. (Compl. at ¶¶ 8-12.) Notwithstanding that Exxon is a non-signatory to the Subcontract, Exxon is closely related to plaintiff insofar as plaintiff performed construction services, in its capacity as a subcontractor, on property owned by Exxon. By sheer virtue of property ownership, it reasonably was foreseeable to plaintiff that Exxon would seek enforcement of the forum-selection clause for disputes arising

10

out of the piping installation. As the counter-party to the Prime Contract that produced the Subcontract at issue, Exxon and the unjust enrichment claim against it are subject to the forum-selection clause.

Similarly, plaintiff's third cause of action for foreclosure of the mechanic's lien against Travelers necessarily arises out of the same operative nexus as the breach of contract claim. But for the breach of contract claim, Travelers would not be in a position to serve as the surety on the lien discharge bond pursuant to Bancker's failure to compensate plaintiff for improvements made on Exxon's property. Accordingly, Traveler's and the foreclosure claim are subject to the forum-selection clause and the third prong of the forum-selection clause validity analysis is satisfied.

### D. Enforcement of the Forum-Selection Clause is not Unreasonable or Unjust and the Clause is Not the Product of Fraud or Overreaching

The fourth prong of the forum-selection clause validity analysis requires the resisting party to rebut the presumption of enforceability "by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 383-84 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). A clause is unreasonable: "(1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purpose be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state." *Roby v. Corporation of Lloyd's*, 996 F.3d 1353, 1363 (2d Cir. 1993).

Here, plaintiff does not proffer any rebuttal to the presumption of enforceability in its opposition papers. Under *M/S Bremen*, dismissal of plaintiff's claims "is proper unless [plaintiff]

makes a prima facie showing that the clause should be set aside." *Id*. at 392; *see M/S Bremen*, 407 U.S. at 15. Because plaintiff fails to satisfy its burden of showing that enforcement of the forum-selection clause would be either unreasonable or unjust, the Court finds the clause to be valid and enforceable. *See Zaltz v. JDATE*, 952 F. Supp.2d 439, 455 (E.D.N.Y. 2013) (finding that plaintiff did not meet her burden "of establishing that the enforcement of defendant's mandatory forum-selection clause, which was reasonably communicated to her, would be unreasonable" because she failed to allege that she would be deprived of her day in court due to the inconvenience of litigating the dispute in California or "that California law would divest her of a remedy."); *M/S Bremen*, 407 U.S. at 10 (forum-selection clauses are prima facie valid and should control questions of venue absent a strong showing that enforcement would be unreasonable and unjust).

## II.  The Forum-Selection Clause is Enforceable

"Once it is determined that the parties 'have agreed to a valid forum-selection clause, [then] a district court should . . . give[ it] controlling weight in all but the most exceptional cases.'" *Santos v. Costa Cruise Lines, Inc.*, 91 F. Supp.3d 372, 380 (E.D.N.Y. 2015) (quoting *Atlantic Marine*, 134 S. Ct. at 581 (internal quotation marks and citation omitted)). "Only under extraordinary circumstances unrelated to the convenience of the parties should the motion to dismiss for *forum non conveniens* be denied." *Id*. (internal quotation marks and citation omitted). *Atlantic Marine* holds that "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atlantic Marine*, 134 S. Ct. at 582. In conducting its analysis, the court should consider arguments addressing only public interest factors and reject those related to the parties' private interests. *Santos*, 91 F. Supp.3d at 380-81. "Public interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of

a diversity case in a forum that is at home with the law.'" *Atlantic Marine*, 134 S. Ct. at 581 n. 6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

Plaintiff has failed to assert any factors, public interest or otherwise, that would provide a basis for not enforcing the forum-selection clause. Plaintiff has not alleged that a trial in a New York State Supreme Court would pose any administrative difficulties, particularly since New York law governs the claims. Notwithstanding diversity of citizenship among the parties, the claims at issue are state law claims properly adjudicated in a New York State court, in accordance with the valid forum-selection clause, where there is much greater familiarity with the controlling state law. Therefore, plaintiff has not set forth any public interest factors that would prevent the Court from enforcing the forum-selection clause.

## III. Defendants' Remaining Grounds for Dismissal

As the Court dismisses the case due to the controlling forum-selection clause, it declines to adjudicate defendants' remaining motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons set forth above, the forum-selection clause is deemed valid and enforceable. Defendants' motion is granted and this case is dismissed pursuant to the doctrine of *forum non conveniens*.

SO ORDERED.

Dated: Brooklyn, New York
      September 22, 2016

/s/
DORA L. IRIZARRY
Chief Judge